UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAKESH BEKKAM,

        *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        *Defendant*.

Civil Action No. 25 - 2010 (LLA)

**MEMORANDUM OPINION**

Plaintiff Rakesh Bekkam, a citizen of India, challenges the revocations of his H-1B visa and H-1B cap number by the U.S. Department of Homeland Security ("DHS"). ECF No. 1. DHS has moved to transfer this action to the District of Maryland and to extend the time to respond to the complaint until twenty-one days after the action is docketed there. ECF No. 6, at 1. Mr. Bekkam consents to the motion. *Id.* For the reasons explained below, the court will grant DHS's motion.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The court takes the allegations in Mr. Bekkam's complaint as true for the purposes of deciding the pending motion. *Louis v. Hagel*, 177 F. Supp. 3d 401, 403 (D.D.C. 2016). The Immigration and Nationality Act ("INA") allows employers to petition for H-1B nonimmigrant visas on behalf of noncitizen beneficiaries. 8 U.S.C. § 1184(c)(1); *see* 8 C.F.R. § 214.2(h)(2), (4) (2025); *Taylor Made Software, Inc. v. Cuccinelli*, 453 F. Supp. 3d 237, 240-41 (D.D.C. 2020). Access to H-1B visas is limited. With some exceptions, the INA caps the number of H-1B visa petitions that may be granted each fiscal year at 65,000. 8 U.S.C. § 1184(g).

Mr. Bekkam is a citizen of India who resides in Hyderabad. ECF No. 1 ¶ 1. In August 2022, the U.S. Customs and Immigration Services ("USCIS") approved an H-1B visa petition that Mr. Bekkam's prospective employer had filed on his behalf. *Id.* ¶¶ 120-121. When Mr. Bekkam's H-1B petition was approved, Mr. Bekkam was counted against the annual H-1B cap and assigned a "cap number." *Id.* ¶ 70. Persons with an H-1B cap number have the right to transfer employers and potentially exceed the traditional six-year limit on H-1B status. *Id.* ¶ 169. In July 2023, another prospective employer filed a transfer visa petition on Mr. Bekkam's behalf. *Id.* ¶ 123.

In February 2025, Mr. Bekkam traveled to India, which required him to update his H-1B visa. *Id.* ¶ 124-125. He dropped his materials off at the U.S. Consulate in Chennai, India, and the Consulate thereafter notified him that his visa had been refused and requested that he attend an in-person interview. *Id.* ¶¶ 125-127. At the interview, Mr. Bekkam was told that "DHS-USCIS determined he was inadmissible for providing false or misleading statement[s]" and that, as a result, his visa had been "refused under INA [§] 212(a)(6)(C)(i)." *Id.* ¶ 128; *see* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this [Act] is inadmissible."). Mr. Bekkam challenged the refusal and sought to correct his records, but he was unsuccessful. ECF No. 1 ¶ 129. The USCIS also revoked Mr. Bekkam's H-1B cap number. *Id.* ¶ 131.

Mr. Bekkam filed this action in June 2025, challenging the revocations of his H-1B visa and his H-1B cap number. ECF No. 1. Mr. Bekkam argues that DHS found him inadmissible for making false or misleading statements without notice or a hearing and revoked his H-1B cap number in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* ECF

No. 1 ¶¶ 134-179.  Mr. Bekkam also seeks to enjoin DHS's "legislative rule prohibiting employers from filing multiple H-1B applications," which he alleges DHS enacted without conducting notice-and-comment rulemaking, in violation of the APA.  *Id.* at 1, 30.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a court may transfer a case from one proper venue to another appropriate venue if it serves "the convenience of parties and witnesses" and is "in the interest of justice."[1]  This is an "individualized, case-by-case consideration," comprised of two steps.  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  First, the transferor court must determine that the action "[could] have been brought" in the transferee district or that the parties consent to litigating there.  28 U.S.C. § 1404(a).  Second, the court must decide whether "considerations of convenience and the interest of justice weigh in favor of transfer to that district."  *Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 59 (D.D.C. 2013).  In making this determination, the court "weigh[s] several private- and public-interest factors."  *Id.* at 59-60.  The private-interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof."  *Id.* at 60.  The public-interest factors include: "(1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home."  *Id.* (quoting *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006)).  "If the balance of private and

---

[1] In contrast, 28 U.S.C. § 1406(a) governs transfer or dismissal when the initial venue is improper.  *See Liu v. Mayorkas*, 737 F. Supp. 3d 1, 3-5 (D.D.C. 2024).  Here, venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) because DHS is headquartered in the District of Columbia.

public interests favor[s] a transfer of venue, then a court may order a transfer." *Id.* (quoting *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012)).

### III.    DISCUSSION

#### A.    Motion to Transfer Venue

Mr. Bekkam consents to DHS's motion to transfer. ECF No. 6, at 1. Nevertheless, the court will consider the facts and determine whether transferring this case to the District of Maryland is in the interest of justice. *Stewart Org.*, 487 U.S. at 29 ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" (quoting *Van Dusen*, 376 U.S. at 622)).

On the first step, the court concludes that the suit could have originally been brought in the District of Maryland. Venue is proper in suits against officers or agencies of the United States "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The revocations of Mr. Bekkam's visa and H-1B cap number were made by the USCIS, which is headquartered in Camp Springs, Maryland. ECF No. 1 ¶¶ 128, 131; ECF No. 6, at 1. While it is not clear from the record whether these decisions were made from the USCIS's headquarters in Maryland or from one of its field offices around the world, *see Pasem v. U.S. Citizenship & Immigr. Servs.*, No. 20-CV-344, 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) (noting that the "[decisionmaking] process for adjudicating plaintiffs' visa applications occur[red] in USCIS service centers around the country"), Mr. Bekkam does not dispute that the USCIS was the "decisionmaker" for his revocations, ECF No. 6, at 4. Therefore,

4

because "a substantial part of the events" giving rise to Mr. Bekkam's claims likely occurred in the District of Maryland, this action "might have been brought" in that district. 28 U.S.C. §§ 1391(e)(1)(B), 1404(a); *see Wei Lai Dev. LLC v. U.S. Citizenship & Immigr. Servs.*, No. 21-CV-887, 2021 WL 2073403, at *3 (D.D.C. May 24, 2021) ("In APA cases, the underlying claim typically arises 'where the decisionmaking process occur[s].'" (alteration in original) (quoting *Gyau v. Sessions*, No. 18-CV-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018))).[2]

On the second step, the court concludes that both the private- and public-interest factors weigh in favor of transferring this case to the District of Maryland. The court begins with the private-interest factors. First, as to Mr. Bekkam's choice of forum, while Mr. Bekkam initially brought his case in this district, he has since consented to DHS's transfer request. ECF No. 6, at 1. The first factor thus favors a transfer. Second, as evidenced by its motion to transfer, *id.*, DHS prefers the District of Maryland. Third, as noted above, Mr. Bekkam's claims arose in Maryland, where the USCIS is based. *See supra* pp. 4-5. The remaining private-interest factors are neutral "given the fact that the [District of Maryland] and the District of Columbia courthouses are located in close proximity to each other." *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 20 (D.D.C. 2008); *see Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18 (D.D.C. 2009) ("Because the plaintiff consents to transfer of the case, and the events giving rise to the claim have occurred in Maryland, the court 'presumes that the convenience of the parties favors transfer.'" (citations omitted) (quoting *Johnson v. Lumenos*, 471 F. Supp. 2d 74, 77 (D.D.C. 2007))).

---

[2] In any event, Mr. Bekkan consents to transferring the case to the District of Maryland, making that venue appropriate under Section 1404's provision that "a district court may transfer any civil action . . . to any district . . . to which all parties have consented."

The public-interest factors likewise weigh in favor of a transfer or are neutral. First, there is no reason to suspect that any federal district court is unfamiliar with federal immigration law. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (explaining that where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor"). Next, there can be no dispute that each district faces congested dockets, making this factor neutral. Finally, "'[c]ontroversies should be resolved in the locale where they arise,' a 'policy rationale [that] applies equally to the judicial review of an administrative decision which will be limited to the administrative record.'" *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 276 (D.D.C. 2018) (second alteration in original) (quoting *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996)). Here, that locale is the District of Maryland, where the USCIS is based.

After balancing the relevant factors as set forth above, the court concludes that transferring this case to the District of Maryland promotes the convenience of the parties and witnesses and is in the interest of justice. *See* 28 U.S.C. § 1404(a). The court will therefore transfer this action to the District of Maryland.

### B.  Motion to Extend the Time to Respond

In general, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time." Fed. R. Civ. P. 6(b)(1). Upon transfer, this matter will be handled by an Assistant U.S. Attorney in the District of Maryland, who will require time to familiarize himself with the case. Mr. Bekkam does not oppose the requested extension. ECF No. 6, at 7. The court will thus extend the time for DHS to respond to the complaint to twenty-one days after the action is docketed in the District of Maryland.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant DHS's Consent Motion to Transfer and Extend.  ECF No. 6.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   October 10, 2025